## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAMION D. WHITAKER,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 24-CV-1389** |
| | : | |
| **YEADON TOWNSHIP POLICE** | : | |
| **DEPARTMENT**, *et al.*, | : | |
| **Defendants.** | : | |

### MEMORANDUM

**MARSTON, J.**                                                               **August 19, 2024**

Currently before the Court is a Complaint filed by Plaintiff Damion D. Whitaker pursuant to 42 U.S.C. § 1983, seeking a new criminal trial in state court and DNA testing based on alleged due process violations. (Doc. No. 1.) Whitaker requests that the Court allow him to proceed *in forma pauperis*. (Doc. No. 4.) For the following reasons, the Court will grant Whitaker leave to proceed *in forma pauperis* but dismiss his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

## I.      FACTUAL ALLEGATIONS[1]

Whitaker's claims focus on his state criminal proceedings. (Doc. No. 1.) Public records reflect that on November 8, 2019, after a jury trial in the Delaware County Court of Common Pleas, Whitaker was found guilty of strangulation, possession of an instrument of a crime, simple assault, and institutional vandalism. *Commonwealth v. Whitaker*, CP-23-CR-0005797-2018

---

[1] The following allegations are taken from the complaint and publicly available dockets of which this Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (providing that courts can consider "matters of public record" in reviewing a motion to dismiss).

(C.P. Del.).  The Pennsylvania Superior Court described the evidence presented at trial as

follows:

> Brandi Gray, her fifteen-year-old son and Yeadon Borough police officers Jenna
> Long and Nicholas Tokonitz testified on behalf of the Commonwealth.
>
> Ms. Gray testified that as of the time of the May 19, 2018 incident, Whitaker had
> been her boyfriend for a few months.  After going out to a restaurant in the
> afternoon with Whitaker and her sons to celebrate the oldest son's twenty-second
> birthday, they returned to her apartment.  Whitaker asked her to have sex two to
> three times, to which she said no.  She fell asleep on her bed and woke when
> Whitaker put a pillow over her face that restricted her breathing until she was able
> to turn her head.  He then wrapped the pillowcase around her throat which she had
> to loosen to breathe.  He used his body and elbows to hold her down.  He removed
> Ms. Gray's jeans and penetrated her vagina.  Whitaker momentarily left the
> bedroom.  When he returned, he retrieved a knife from her dresser and held it to
> her throat, pulling her to a standing position.  She testified that she had been fearful
> that Whitaker would harm her with the knife, which she identified at trial.
>
> Ms. Gray's fifteen-year-old son testified that on the day of the incident, he heard a
> "loud commotion" from the bedroom that concerned him so he went in to
> investigate.  While standing at the bedroom doorway in shock, he observed that
> Whitaker had a pillowcase around Ms. Gray's neck and she was struggling to break
> free.  Ms. Gray was able to toss her cellphone to her son and he then hid in a closet
> and called his grandmother and 911.
>
> Officer Long testified that she was the first officer to arrive on scene. When she
> parked her vehicle in front of the apartment, she could hear a female screaming.
> Upon entering the residence and approaching the stairway, she observed Ms. Gray
> and Whitaker standing close together at the top of the stairs with him holding the
> knife.  Whitaker tossed the knife down the stairs and Ms. Gray was visibly upset
> and shaking.  The officer collected the knife, pillows and pillowcases.  She
> identified the knife at trial.
>
> Officer Long stated that after Whitaker was placed in a holding cell at the police
> station, she observed him masturbating on the closed-circuit camera.  The trial court
> overruled Whitaker's best evidence rule objection to testimony about what was seen
> on the video.  The officer stated that she accompanied Officer Tokonitz when he
> went to tell Whitaker to stop his behavior and she saw urine on the floor of the cell.
>
> Officer Tokonitz testified that he and another officer were dispatched to Ms. Gray's
> residence after Officer Long had gotten there.  They placed Whitaker in handcuffs
> and escorted him to a police vehicle.  Although Whitaker initially cooperated with
> the officers, he then resisted, and the police had to forcibly place him in their vehicle
> and into the holding cell at the police station.  Afterward, Officer Tokonitz observed

> Whitaker masturbating on the closed-circuit television. The officer went to the cell to tell him to stop and observed fresh urine both in the cell and in front of it, and that the plywood frame on the cell's bed was broken in half. Whitaker had been the only person in this cell block and the officer testified the cell had been clean earlier and there had been no damage to the bedframe before he placed Whitaker in it.

*Commonwealth v. Whitaker*, 277 A.3d 1137 (table), 2022 WL 1088628, at *1–2 (Pa. Super. Ct. Apr. 12, 2022), *appeal denied*, 286 A.3d 209 (Pa. 2022) (internal citations omitted).

Whitaker was initially sentenced to an aggregate sentence of 44 to 132 months' incarceration. *Id.* at *2. However, after a successful post-judgment motion challenging his original sentence, he was resentenced and received an aggregate sentence of 36 to 132 months' incarceration. *Id.*; *Whitaker*, CP-23-CR-0005797-2018. He also filed a post-judgment motion for DNA testing, but this motion was denied. *Whitaker*, CP-23-CR-0005797-2018. Whitaker's appeal of his conviction was unsuccessful, and his petition for allowance of appeal to the Pennsylvania Supreme Court was denied. *Whitaker*, 2022 WL 1088628, at *1; *Commonwealth v. Whitaker*, 286 A.3d 209 (Pa. 2022) (table).

On March 7, 2024, prior to filing the instant civil rights action, Whitaker submitted an ambiguous filing to this Court pertaining to his state criminal proceeding. *See* Doc. No. 1, *Whitaker v. The Court of Common Pleas of Delaware County*, Civ. A. No. 24-1039 (E.D. Pa. Mar. 7, 2024). That filing was docketed as a petition for a writ of habeas corpus because it appeared to seek habeas relief and was assigned to the Honorable Gene E.K. Pratter. *See generally*, *Whitaker v. The Court of Common Pleas of Delaware County*, Civ. A. No. 24-1039 (E.D. Pa.). The Clerk of Court sent Whitaker a blank copy of the Court's form petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and instructed him that, if he sought to proceed in a habeas action, he would have to complete the form and either pay the $5 fee or seek leave to proceed *in forma pauperis*. *Id.* at Doc. No. 3. Whitaker responded on March 16, 2024 with a

3

letter informing the Court that he did not want to proceed with his petition for habeas corpus and instead preferred to pursue a civil rights action pursuant to § 1983. *Id.* at Doc. No. 4. Judge Pratter thus dismissed Whitaker's habeas case without prejudice and directed the Clerk of Court to send Whitaker both a copy of the prisoner's civil rights action form and *in forma pauperis* form. *Id.* at Doc. No. 5.

On April 1, 2024, Whitaker filed the instant civil action against "Prosecutor Diane Horn Jasmine," who prosecuted the case against him in state court,[2] and two officers of the Yeadon Township Police Department, Officers Jenna Long and Nicholas Tokonitz, who testified at his trial.[3] (Doc. No. 1 at 1–3.) He sues each Defendant in their individual capacities. (*Id.*) Whitaker alleges that Defendant Jasmine permitted the two Officer Defendants to commit perjury during his trial and failed to order DNA testing on the knife and pillowcase, as he requested during discovery. (*Id.* at 4–5.) He claims that this DNA evidence would prove him innocent. (*Id.* at 5.) As a result, he asserts that his due process rights were violated. (*Id.* at 5.) He also appears to pursue a due process claim based on the "Pennsylvania Postconviction Act under 42 Pa. Cons. Stat. §§ 9541 to 9546 – statute of limitations – newly discovered evidence

---

[2] The docket for the underlying criminal proceeding reflects that the prosecutor's name is Diane Jasmine Horn. *Whitaker*, CP-23-CR-0005797-2018. It is apparent that this is the individual to whom Whitaker is referring.

[3] The caption is somewhat ambiguous in that it suggests Whitaker may have also intended to sue the Yeadon Township Police Department and the County of Media. (Doc. No. 1 at 1.) Although these entities have been listed as Defendants on the docket, having reviewed the Complaint, the Court understands these phrases to modify the three individually named Defendants, because only three Defendants are listed in the body of the Complaint. (*Id.* at 2–3.) In other words, the Court believes that Whitaker included "Yeadon Township: Police Department" in the caption to further identify Defendants Long and Fokonitz and included "Delaware County of Media, P.A." to further identify Defendant Jasmine. In any event, had he named these additional Defendants, Whitaker's claims against them would have failed for the same reasons stated below. Further, to the extent Whitaker sought to include any additional defendants who were listed in his habeas case (*see* Doc. No. 6), any claims against them would similarly fail.

claims based on D.N.A. testing." (*Id.* at 3.)  As relief, Whitaker seeks the DNA testing of the knife for "[his] fingerprints and [the victim's] D.N.A." and a new criminal trial that accounts for this evidence and disregards the allegedly perjured testimony of Officers Long and Tokonitz. (*Id.* at 5.)

## II.    STANDARD OF REVIEW

The Court grants Whitaker leave to proceed *in forma pauperis* because it appears that he does not have the ability to pre-pay the fees to commence this case.[4]  28 U.S.C. § 1915(a)(1); *see also Chain v. Gross*, Civil Action No. 18-4610, 2018 WL 5631642, at *1 (E.D. Pa. Oct. 31, 2018) ("§ 1915(a) allows a litigant to commence a civil or criminal action in federal court in forma pauperis by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit." (quotation marks and citations omitted)).  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to screen Whitaker's Complaint and dismiss it to the extent it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Muchler v. Greenwald*, 624 F. App'x 794, 797 (3d Cir. 2015).  Thus, the Court is required to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "At this early stage of the litigation, [the Court will] accept the facts alleged in [the pro se] complaint as true, draw all reasonable inferences in [the plaintiff's] favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible [] claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (alterations accepted and internal quotation marks omitted).  Conclusory

---

[4] However, as Whitaker is currently incarcerated, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Whitaker is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)).

## III.    DISCUSSION

Liberally construing Whitaker's complaint, as the Court must, it appears that he is asserting due process claims related to the prosecution's alleged elicitation of perjury, withholding and refusal to test exculpatory DNA evidence in advance of trial, and withholding of DNA materials post-conviction.  (Doc. No. 1 at 4–5.)  The Court turns first to Whitaker's claims regarding the alleged perjury and withholding of exculpatory evidence, finding that they are not cognizable under § 1983 and must be addressed through a petition seeking a writ of habeas corpus.  The Court will then address Plaintiff's claims regarding access to DNA materials postconviction, finding that he has failed to state a plausible claim for relief.

### A.    Claims Regarding Perjury and the Withholding of Exculpatory DNA Evidence

First, to the extent Whitaker seeks relief from his state prosecution based on the prosecutor's purported eliciting of perjured testimony from the two police officers and refusal to conduct exculpatory DNA testing in violation of their obligations under *Brady v. Maryland*, 373 U.S. 83 (1983), he has not stated cognizable § 1983 claims.

"Although both § 1983 and habeas corpus allow prisoners to challenge unconstitutional conduct by state officers, the two are not coextensive either in purpose or effect."  *Leamer v. Fauver*, 288 F.3d 532, 540 (3d Cir. 2002).  The Supreme Court has long held that "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus," rather than a § 1983 action.  *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam); *see also Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is

challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").  This means that "whenever [a prisoner's] challenge ultimately attacks the 'core of habeas'—the validity of the continued conviction or the fact or length of the sentence—[the] challenge, however denominated . . . must be brought by way of a habeas corpus petition." *Leamer*, 288 F.3d at 542.  This applies whether a § 1983 plaintiff seeks equitable relief or money damages.  *See Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)); *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (holding that a § 1983 plaintiff may not recover "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless he or she "prove[s] that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus").  Thus, put simply, "[a] claim . . . bearing [a] relationship to a conviction or sentence that has *not* been . . . invalidated is not cognizable under § 1983." *Heck*, 512 U.S. at 487 (emphasis in original).

Applying these principles here, Whitaker's request for a new trial and other related relief premised on his assertion that the prosecutor obtained his conviction based on perjury and withheld and refused to test what he claims is exculpatory DNA evidence in violation of his due process rights are not cognizable under § 1983.  (Doc. No. 1 at 4–5.)  Both of these claims

7

challenge the legitimacy of Whitaker's otherwise valid conviction and therefore must be addressed through a habeas action.  *See Long v. Atl. City Police Dep't*, 670 F.3d 436, 447 (3d Cir. 2012) (holding that *Heck* barred a claim that "defendants conspired to obtain a capital murder conviction against [plaintiff]" including by committing perjury and fabricating evidence); *Humphries v. Houghton*, 442 F. App'x 626, 629 (3d Cir. 2011) (per curiam) ("Humphries' claims that defendants used perjury and false evidence to secure his federal conviction are not cognizable under *Heck*'s favorable termination rule."); *Skinner v. Switzer*, 562 U.S. 521, 536 (2011) ("*Brady* claims have ranked within the traditional core of habeas corpus and outside the province of § 1983."); *Heck*, 512 U.S. at 479, 490 (claim that prosecutors and an investigator had "'knowingly destroyed' evidence 'which was exculpatory in nature and could have proved [petitioner's] innocence'" cannot be maintained under § 1983).

Because Whitaker has plead a § 1983 cause of action that "effectively seeks habeas relief," he has failed to state claim.  *Garrett v. Murphy*, 17 F.4th 419, 430 (3d Cir. 2021). Whitaker's "only federal remedy is through a writ of habeas corpus after exhausting state remedies."  *Id.*  The Court will therefore dismiss these due process claims without prejudice so that Whitaker can seek habeas relief, notwithstanding his initial reluctance to do so.

**B.  Claims Based on the Post-conviction DNA Testing**

The Court turns next to Whitaker's due process claims related to his desire for post-conviction DNA testing.[5]  (Doc. No. 1 at 4–5.)  As an initial matter, the Supreme Court has made clear that this type of claim is not barred by the principles set forth above because the DNA

---

[5] The Court construes the complaint to raise such a claim based on Whitaker's passing reference to Pennsylvania's statute providing for post-conviction DNA testing and citation to *District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52 (2009).  (Doc. No. 1 at 3–4.)  As the Court notes below, Whitaker's allegations on this front are entirely lacking.  While this suggests that he may not have intended to bring forth this cause of action, out of an abundance of caution, the Court will address its merits.

testing Whitaker seeks could very well be inculpatory and therefore would not imply the invalidity of his conviction.[6]  *See Skinner*, 562 U.S. at 534 ("Measured against our prior holdings, Skinner has properly invoked § 1983.  Success in his suit for DNA testing would not 'necessarily imply' the invalidity of his conviction.  While test results might prove exculpatory, that outcome is hardly inevitable."); *Spuck v. Pennsylvania*, 456 F. App'x 72, 73 (3d Cir. 2012) ("[T]he Supreme Court of the United States held that a convicted state prisoner may request via § 1983 the DNA testing of crime-scene evidence.").

Nevertheless, Whitaker's claim faces significant challenges.  The Supreme Court has made clear that there is no substantive due process right to post-conviction DNA testing as Whitaker alleges.  *See District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52, 72 (2009); *Skinner,* 562 U.S. at 525 ("*Osborne* rejected the extension of substantive due process to this area . . . .") (internal citations omitted); *see also Grier v. Klem*, 591 F.3d 672, 678 (3d Cir. 2010) (relying upon *Osborne* and acknowledging that the plaintiff had no substantive due process right to access DNA evidence).  Additionally, there is "slim room" for a procedural due process claim in this context.  *Skinner*, 562 U.S. at 525.  Indeed, "procedural due process does not *require* that a district attorney disclose all potentially exculpatory evidence for post-conviction relief to a prisoner."  *Grier*, 591 F.3d at 678.  Instead, "[f]ederal courts may upset a

---

[6] This contrasts with Whitaker's claim, discussed above, that the prosecution skirted its obligations under *Brady* by refusing to conduct DNA testing or provide the relevant materials to him and his counsel before trial.  Whereas "*Brady* evidence is, by definition, always favorable to the defendant and material to his guilt or punishment," and therefore cannot be pursued in a § 1983 claim absent evidence that the conviction at issue was invalidated, Whitaker's present request for post-conviction DNA testing may lead to additional inculpatory evidence.  *Skinner*, 562 U.S. at 536; *see also Ramey v. Delaware Co. Dist. Att'y*, No. CV 20-4576, 2021 WL 409976, at *5 (E.D. Pa. Feb. 5, 2021) (distinguishing the plaintiff's *Brady* claim in which he argued "the defendants have withheld exculpatory [DNA] evidence from him because the evidence would show his actual innocence" from claims for post-conviction DNA testing under *Skinner* and finding the plaintiff's claim was not cognizable under *Heck* because "success in this action would necessarily imply the invalidity of his convictions, which have not been set aside").

State's postconviction relief procedures" and provide relief on procedural due process grounds under § 1983 only if the state procedures available "are fundamentally inadequate to vindicate the substantive rights provided." *Osborne*, 557 U.S. at 69.

Here, Whitaker has failed to state a procedural due process claim within this limited framework because he makes no meaningful effort to explain how, if at all, Pennsylvania's procedures for post-conviction DNA testing violated his due process rights.[7]  This is fatal to his claim.  *See Spuck*, 456 F. App'x at 73 (summarily affirming dismissal of due process claims where "we discern no attempt by Spuck to explain how Pennsylvania's specific procedures for postconviction DNA testing are inadequate as a matter of federal law" (footnote omitted)); *Turner v. Dist. Att'y Phila. Cnty.*, No. 22-0491, 2022 WL 1568395, at *5 (E.D. Pa. May 18, 2022) ("Although he vaguely suggests that he sought evidence in an underlying PCRA proceeding, Mr. Turner provides no specific facts from which the Court could conclude that Pennsylvania's post-conviction relief procedures are fundamentally unfair or inadequate.").  And on this front, Whitaker faces an uphill battle as courts in this circuit have routinely held that Pennsylvania's post-conviction procedures in this area accord with due process.  *See Young v. Phila. Cnty. Dist. Att'ys Off.*, 341 F. App'x 843, 845 (3d Cir. 2009) (per curiam) ("In order for Pennsylvania's procedures to violate due process, they must offend, at a minimum, some principle of justice so rooted in the traditions and conscience of our people to be ranked as fundamental, or they must transgress a recognized principle of fundamental fairness in operation. We conclude that Pennsylvania's procedures for post-conviction relief do neither." (internal quotation marks and citation omitted)); *Hanson v. Lehigh Cnty. Dist. Att'ys Off.*, No. 21-3368,

---

[7] While Whitaker does not allege in his Complaint that he attempted to utilize Pennsylvania's procedures for acquiring post-conviction DNA testing, *see* 42 Pa. Cons. Stat. § 9543.1(a) (providing the procedure for obtaining DNA evidence post-conviction), the Court's review of Whitaker's state court docket reveals that he filed a motion for DNA testing that was denied by the state court.

2021 WL 3910741, at *7 (E.D. Pa. Sept. 1, 2021) ("Notably, other courts have found Pennsylvania's procedure to be adequate in the context of § 1983 cases filed by prisoners seeking post-conviction DNA testing."); *Wagner v. Dist. Att'y Allegheny Cnty., Pa.*, No. 11-762, 2012 WL 2090093, at *10 (W.D. Pa. May 21, 2012), *report and recommendation adopted*, 2012 WL 2089799 (W.D. Pa. June 8, 2012), ("Wagner fails to make the difficult showing that the Pennsylvania DNA testing procedures as discussed above are facially invalid as they contain similar requirements and limitations imposed by other DNA-testing statutes, including the post-conviction statute upheld in *Osborne.*").

Accordingly, while Whitaker's due process claims based on post-conviction DNA testing are cognizable under § 1983, they nevertheless fail because they are not plausible.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Whitaker leave to proceed *in forma pauperis* and dismiss his complaint.  To the extent Whitaker's pursues claims that are not cognizable, they are dismissed without prejudice so that Whitaker can challenge his conviction in a habeas proceeding and file a new civil rights complaint in the event his conviction is reversed, vacated, or otherwise invalidated.  *See Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016) (holding that *Heck*-barred claims must be dismissed without prejudice); *Heck*, 512 U.S. at 487 (providing that claims under § 1983 arising from "actions whose unlawfulness would render a conviction or sentence invalid" may not be brought unless the conviction is invalidated).  An appropriate Order follows.